FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## May 13, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ERRIN R.,[1]

                Plaintiff,

      v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                Defendant.

No.    4:20-CV-5097-EFS

**ORDER GRANTING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND DENYING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Errin R. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly considering the medical opinions, 2) failing to properly consider lay statements, 3) discounting Plaintiff's symptom reports, 4) improperly determining that the impairments did not meet or

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 14 & 17.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

equal a listing, and 5) improperly assessing Plaintiff's residual functional capacity and, therefore, relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 14, and denies the Commissioner's Motion for Summary Judgment, ECF No. 17.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] *Id.* § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii)

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.   Factual and Procedural Summary

Plaintiff filed a Title II application, alleging a disability onset date of February 13, 2017.[18] Her claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Marie Palachuk.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 184-88.

[19] AR 120-26.

[20] AR 41-83.

- Step one: Plaintiff had not engaged in substantial gainful activity since February 13, 2017, the alleged onset date, through her date last insured of December 31, 2021.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, fibromyalgia, morbid obesity (BMI>40), migraines, depressive disorder, and anxiety.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work with lifting and carrying 20 pounds occasionally and 10 pounds frequently and

  > Standing and/or walking is limited to 2 hours per day, requiring the ability to alternate sit/stand every 60 minutes. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to extreme temperatures and humidity, with no more than moderate exposure to noise and vibrations. She must avoid all hazards, such as unprotected heights and dangerous moving machinery. She is able to understand, remember, and carry out simple repetitive tasks and complex tasks, and is able to maintain concentration, persistence, and pace for 2-hour intervals between regularly scheduled breaks, with no more than routine changes. She can have no public contact, but is capable of superficial (defined as non-collaborative, no teamwork) interaction with coworkers.

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as small products assembler II, electronics worker, and marker.[21]

When assessing the medical-opinion evidence, the ALJ found:

- the reviewing testimony of John Morse, M.D., and reviewing opinions of J.D. Fitterer, M.D., and Bruce Eather, Ph.D., greatly persuasive.

- portions of the treating opinion of Stephen Hull, ARNP somewhat persuasive and other portions not persuasive.

- the treating opinion of Amanda Friese, PAC, and reviewing testimony of Colette Valette, Ph.D., not persuasive.

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[22]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[23] Plaintiff timely appealed to this Court.

---

[21] AR 10-32.

[22] AR 21-22.

[23] AR 1-6.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[24] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[25] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[26] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[27] The Court considers the entire record.[28]

---

[24] 42 U.S.C. § 405(g).

[25] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[26] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[27] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[28] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Further, the Court may not reverse an ALJ decision due to a harmless error.[29] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[30] The party appealing the ALJ's decision generally bears the burden of establishing harm.[31]

## IV.    Analysis

### A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff challenges the ALJ's evaluation of the medical opinions, namely the opinions of Amanda Friese, PAC, and Dr. John Morse.

### 1.    Standard[32]

An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings.[33] The ALJ need not however

---

[29] *Molina*, 674 F.3d at 1111.

[30] *Id.* at 1115 (cleaned up).

[31] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[32] For claims filed on or after March 27, 2017, such as Plaintiff's claims, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

[33] 20 C.F.R. § 404.1520c(a), (b).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

"give any specific evidentiary weight . . . to any medical opinion(s)."[34] A medical

opinion is a statement from a medical source about what the claimant can still do

despite her impairments and whether the claimant has one or more impairment-

related limitations in the following abilities:

- performing physical demands of work activities

- performing mental demands of work activities (such as understanding,
  remembering, carrying out instructions, maintaining concentration,
  persistence, or pace, and responding appropriately to supervision, co-
  workers, or work pressures in a work setting)

- performing sensory demands of work

- adapting to environmental conditions.[35]

The factors for evaluating the persuasiveness of medical opinions and prior

administrative medical findings include, but are not limited to, supportability,

consistency, relationship with the claimant, and specialization.[36] Supportability

---

[34] Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R.
§ 404.1520c(a).

[35] 20 C.F.R. § 404.1513(a).

[36] *Id.* § 404.1520c(c)(1)-(5). When assessing the medical source's relationship with
the claimant, the ALJ is to consider the treatment length, frequency, purpose, and
extent, and whether an examination was conducted. *Id.* The ALJ may also consider
whether the medical source has familiarity with the other record evidence or an

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1

2

and consistency are the most important factors, and the ALJ is required to explain

how both of these factors were considered:[37]

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[38]

Typically, the ALJ may, but is not required to, explain how the other factors were

considered.[39]

---

understanding of the disability program's policies and evidentiary requirements.
*Id.*

[37] *Id.* § 404.1520c(b)(2).

[38] *Id.* § 404.1520c(c)(1)-(2).

[39] *Id.* § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. *Id.* § 404.1520c(b)(3).

2.    <u>Ms. Friese, PAC</u>

Since 2016, Ms. Friese treated Plaintiff.[40] In June 2018, Ms. Friese provided a medical source statement diagnosing Plaintiff with fibromyalgia, chronic migraines, and chronic back and leg pain, and opining:

- Plaintiff needed to lie down 2-3 hours a day due to leg and back pain and numbness.

- Her medication possibly causes "brain fog."

- Her disc disease and fibromyalgia were likely to cause pain.

- Her conditions were unlikely to fully resolve.

- Work on a regular and continual basis would cause Plaintiff's condition to deteriorate as increased activity caused increased pain and symptoms.

- It was likely that Plaintiff would miss four or more days of work per month because of her migraines and back and leg pain that affect her movement and walking.

- Plaintiff was severely limited in that she was unable to lift at least 2 pounds or unable to stand and/or walk on a sustained, competitive basis.

- Plaintiff had manipulative limitations with her upper extremities due to sporadic right arm pain caused by a neck injury in the distant past.

---

[40] *See, e.g.*, AR 343-44, 353-54, 365-66, 368-72, 435-36, 564-65, & 569-75.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

- It was likely that Plaintiff would be off-task and unproductive more than 30 percent of the 40-hour workweek.[41]

The ALJ found Ms. Friese's opinion not persuasive.[42]

As to the opined manipulative and mobility limitations, the ALJ found them not supported by the medical record. The ALJ, however, failed to address Ms. Friese's opined limitations as to Plaintiff's migraines. Ms. Friese noted that Plaintiff had at least 15 migraines per month and opined they affected her function and work attendance. The record contains treatment records for migraines, including a March 2017 record noting Plaintiff "is moving pretty stiffly and cautiously today, a bit of shuffling gait as she gets to walking. She goes from standing to sitting occ[asionally] as needed. . . She is very nauseated with headache while in office today. No vomiting," and a May 2017 treatment record for migraines noting that Plaintiff was mildly distressed, uncomfortable, and walked slowly with a cane.[43] The vocational expert testified that an individual who misses more than one day of work per month would not maintain their employment.[44] The ALJ failed to explain why she did not find Ms. Friese's opined limitations as to

---

[41] AR 621-23.

[42] AR 23. The ALJ mistakenly spelled Ms. Friese's last name as "Freise." This oversight is inconsequential.

[43] AR 344 & 435.

[44] AR 81-82.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Plaintiff's migraines consistent with or supported by the evidence. Given the vocational expert's testimony, the ALJ's failure was consequential. On remand, the ALJ is to evaluate Ms. Friese's opinion that Plaintiff's migraines would affect her functioning and cause excessive absences.

As to Ms. Friese's opined manipulative limitations, the ALJ highlighted that Ms. Friese's chart notes did not mention any complaints or findings about a neck injury in the distant past that would support the very significant manipulative limitations.[45] While the cited records do not include any objective findings pertaining to loss of strength or mobility in Plaintiff's upper extremities, only one of the records cited by the ALJ was a chart note prepared by Ms. Friese. This cited May 2017 chart note prepared by Ms. Friese indicated that Plaintiff was walking with a cane and appeared mildly distressed and uncomfortable, and that no full musculoskeletal exam was performed.[46] Although the record does not detail a neck injury, the record discloses that Plaintiff injured her back when she slipped on black ice in February 2017.[47] When Plaintiff met with the rheumatologist in May

---

[45] AR 23 (citing AR 322, 423-24, 432, & 435).

[46] AR 435.

[47] AR 60, 343, 348, 431, & 484. The Commissioner argues that Ms. Friese did not complain of neck pain to Ms. Friese. ECF No. 17 at 10-11. However, the March 2017 treatment note prepared by Ms. Friese indicates that Plaintiff reported she

2017, she reported the black-ice injury caused pain and numbness in her arms. The rheumatologist, Dr. John McCormick, performed a musculoskeletal examination and found mild Heberden nodes of the index fingers, thoracic outlet syndrome positive bilaterally left worse than right after performing Roos test, and painful and minimally limited left shoulder range of motion.[48] Dr. McCormick also noted that, in addition to the imaging revealing lumbar degenerative disc and joint disease, an MRI of the right shoulder in 2009 showed degeneration of the right supraspinatus tendon and possible early degenerative changes in the acromioclavicular joint and the humeral head.[49] The other medical records cited by the ALJ reflect that Plaintiff's neck was stiff but that her bilateral upper extremity strength was 5/5.[50] This record would benefit from a consultative examination on remand. The consultative physical examination will facilitate the ALJ's findings as to Plaintiff's manipulative abilities and mobility, along with migraine and fibromyalgia symptoms, following her spinal cord stimulator.[51] On remand, the consultative physical examiner is to be given sufficient medical records to permit a

_____

fell on ice exacerbating her back injury and that she had neck pain and stiffness. AR 343-44.

[48] AR 432.

[49] AR 432-33.

[50] *See, e.g.*, AR 486, 503, & 535.

[51] 20 C.F.R. § 404.1519(a, (b)(4).

longitudinal perspective as to Plaintiff's physical conditions, including any imaging, the rheumatologist's May 2017 record referencing the bilateral thoracic outlet syndrome, and the spinal-cord-stimulator surgery records .[52] Moreover, on remand, the ALJ is encouraged to seek clarification from Ms. Friese as to her opined manipulative limitations.[53]

### 3. Dr. Morse

Dr. Morse reviewed the medical record and opined that Plaintiff was limited to:

- lifting 20 pounds occasionally and 10 pounds frequently

- standing and walking to 2 hours, and sitting for 6 hours

- occasional ramps, stairs, stooping, kneeling, crouching, and crawling

- no ladders, ropes, and scaffolds

- limited exposure to cold, heat, humidity, noise, and vibration

- not even moderate exposure to hazardous machinery or unprotected heights.[54]

The ALJ found Dr. Morse's opinion to be greatly persuasive but noted that Dr. Morse's lifting and carrying restrictions were indictive of a light RFC rather

---

[52] *Id.* § 404.1519n.

[53] Ms. Friese selected both "never" and "occasional use" in regard to Plaintiff's right upper extremity's reaching limitations. AR 623.

[54] AR 49.

than a sedentary RFC.[55] The ALJ found Dr. Morse's opinion persuasive because he had the opportunity to review the longitudinal medical record and based his opinion on the objective and clinical findings.

Plaintiff argues Dr. Morse did not adequately account for her fibromyalgia, migraine headaches, or thoracic outlet syndrome. While Dr. Morse did limit Plaintiff's exposure to cold, heat, humidity, noise, and vibration, he mentioned that he was unsure whether these were triggers for her migraine headaches. Dr. Morse testified that fibromyalgia was not a medically determinable impairment but rather fibromyalgia and migraines were conditions based on the patient's reported symptomatology.[56] Notwithstanding Dr. Morse's testimony in this regard, the ALJ did not discuss whether Plaintiff's reported migraine symptoms—or Plaintiff's mother's reported statements about Plaintiff's migraine symptoms—were inconsistent with the medical evidence. The ALJ did not meaningfully articulate her findings as to Plaintiff's migraine symptoms.

On this record, remand for further analysis and explanation by the ALJ is needed.

**B.    Lay Witness: Plaintiff establishes error.**

Plaintiff argues the ALJ erred by failing to discuss her mother's statements. Her mother completed a headache questionnaire (Exhibit 4E) and third-party

---

[55] AR 22 & 50.

[56] AR 51-53.

function report (Exhibit 5E) in April 2017.[57] The Commissioner counters with three arguments: the ALJ considered the evidence submitted by the mother; the mother's statements were not material; and any error by the ALJ in failing to discuss the mother's statements was harmless because the mother's report was similar to Plaintiff's reports, which the ALJ discounted.[58]

Per regulation 20 C.F.R. § 404.1520c(d), the ALJ need not articulate whether a nonmedical source statement (as opposed to a medical source statement) is supported by or consistent with the evidence. However, once a medically determinable impairment is established, the Program Operations Manual System (POMS) directs the ALJ to "consider evidence from nonmedical sources for all other findings in [the] claim, as appropriate."[59] Accordingly, "when evidence from [a] nonmedical source is material to other analyses or conclusions in a claim," the ALJ must articulate that in the determination.[60] For instance, testimony by a lay witness can provide an important source of information about the limiting impacts of a claimant's impairments.[61]

---

[57] AR 232-40.

[58] ECF No. 17 at 20-21.

[59] POMS DI 24503.020C.

[60] POMS DI 24503.020D.

[61] *See Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Here, the ALJ stated she was "not required to articulate how evidence from nonmedical sources, such as the lay witness testimony/statements at Exhibits 4E and 5E, are considered."[62] Exhibits 4E and 5E were the mother's statements. Plaintiff's mother reported she observed Plaintiff with a headache five times in the preceding two weeks and the headaches affected her daily living activities.[63] The mother also reported that she saw Plaintiff two to three times a week and that Plaintiff had troubles sitting, standing, or walking for any length of time, she was unstable on her feet, she could not lift or reach much, and her pain and medication impacted her concentration.[64]

The mother's statements were material to considering Plaintiff's limiting symptoms, particularly because the medical expert testified that migraines and fibromyalgia limitations are generally based on the patient's self-reports rather than objective findings. Thus, the ALJ erred by not articulating how she considered the mother's statements when assessing the limiting impacts of Plaintiff's impairments.

The Commissioner submits that any error by the ALJ was harmless because the mother's statements about Plaintiff's symptoms were similar to Plaintiff's reported symptoms and the ALJ discounted Plaintiff's reported symptoms. Because

---

[62] AR 22.

[63] AR 232.

[64] AR 233-40

this matter is being remanded on errors related to consideration of the medical evidence, and because the mother's statements pertain, in part, to Plaintiff's migraines and associated symptoms, this error was not harmless. On remand, the ALJ is to articulate how the mother's statements were considered as to the limiting effects of Plaintiff's symptoms.

**C.    Plaintiff's Symptom Reports: To be reconsidered on remand.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[65] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[66] General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what

---

[65] *Molina*, 674 F.3d at 1112.

[66] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

1

2

evidence undermines these claims.[67] "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."[68]

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.[69] The ALJ is instructed to "consider all of the evidence in an individual's record" to "determine how symptoms limit ability to perform work-related activities."[70]

---

[67] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[68] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[69] SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c).

[70] SSR 16-3p, 2016 WL 1119029, at *2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Here, although the ALJ recognized that Plaintiff's pain complaints have been consistent and resulted in many evaluations and care, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms because:

- Her testimony that "she is very limited physically, primarily sitting and/or lying down to relieve her symptoms and having her children or husband do all household chores"[71] is inconsistent with her ability to prepare simple meals, do light housework, fold the laundry, do some shopping, and her reported improvement in performing household responsibilities and activities of daily living.

- Her testimony that her pain remained the same with the spinal cord stimulator was inconsistent with the medical records indicating that she reported improved pain, that she stopped using a cane or walker, and that her gait was normal.

- Plaintiff offered inconsistent statements about why she stopped working in August 2016 and the extent of her pain when she worked.

- Her claimed disability was not supported by the objective evidence in the record, including that there were minimal objective findings to support her pain reports and the physical examinations had normal neurological findings.

---

[71] AR 21.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

- The mental health records only revealed moderate depression and anxiety.[72]

On remand, if the ALJ discounts Plaintiff's symptom reports because they were inconsistent with her activities, the ALJ must meaningfully articulate why Plaintiff's ability to prepare simple meals, perform light housework, fold laundry, do some shopping, handle her finances, and get along with family members, is inconsistent with Plaintiff's testimony that she sits or lies down often to relieve her symptoms.[73] In addition, if the ALJ discounts Plaintiff's reported symptoms because she reported improvement in performing household responsibilities and activities of daily living to her medical providers, the ALJ must support this finding with substantial evidence. Here, the ALJ supported this finding with a medical record from May 2017, which states that Plaintiff noted improvement in the ability to perform household responsibilities and activities of daily living but that she still experienced pain, her pain was 10/10, and she was observed with a slow gait assisted by a walker.[74] This cited medical record does not constitute such relevant evidence to reasonably support a finding that Plaintiff's reported symptoms were inconsistent with her reported improvement. When considering the post-spinal cord stimulator records, the ALJ must be mindful that Plaintiff

---

[72] AR 20-22.

[73] *Molina*, 674 F.3d at 1112-13.

[74] AR 483-85.

continued to report pain, even though her mobility greatly improved.[75] Finally, if the ALJ discounts Plaintiff's symptom reports because she offered varying reports as to why she ceased working, the ALJ must meaningfully articulate how Plaintiff's "work" statements were inconsistent with each other considering that her alleged disability onset date is February 13, 2017, which was about when she fell on black ice exacerbating the back pain she had previously experienced while working.[76]

On remand, if the ALJ discounts Plaintiff's symptom reports, the ALJ must meaningfully articulate the reasons for doing so with citation to supporting evidence.

**D.    Other Steps: The ALJ must reevaluate.**

Plaintiff argues the ALJ erred at steps three and five. Because the ALJ erred when considering the medical evidence and the mother's statements, the ALJ

---

[75] AR 73, 495-98, & 509-10. *See also Revels v. Berryhill*, 874 F.3d 664, 682 (9th Cir. 2017) (requiring the medical evidence to be construed considering fibromyalgia's unique symptoms and diagnostic methods).

[76] AR 60, 431, 484. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

1
2

is to engage in a new sequential analysis after the consultative examination is ordered on remand.

3      **E.     Remand for Further Proceedings**

4          Plaintiff submits that a remand for payment of benefits is warranted.

5    However, additional information is needed as to Plaintiff's exertional abilities,

6    including reaching, handling, and ambulating on a sustained basis, and whether

7    and/or how Plaintiff's physical conditions impact her nonexertional abilities. [77] A

8    consultative examination as to Plaintiff's exertional abilities is needed. The

9    consultative examiner must be given sufficient medical records to allow for a

10   longitudinal perspective, including any imaging of Plaintiff's back, shoulders, and

11   extremities, as well as Dr. McCormick's May 2017 treatment note and the spinal

12   code stimulator surgery and post-surgery follow-up records.[78] The ALJ is to then

13   reconsider the medical evidence, Plaintiff's symptom reports, the mother's

14   statements, and reevaluate the sequential process.

15

16

17   [77] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*,

18   379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances,

19   is to remand to the agency for additional investigation or explanation"); *Treichler v.*

20   *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

21   [78] AR 430-33. If a consultative examination is ordered, the consultative examiner is

22   to append the records that the examiner reviewed to the report, or at a minimum

23   clearly identify the records reviewed.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 24

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 13th  day of May 2021.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge